Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Sidney I. Schenkier | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2643 | **DATE** | 1/29/2002 |
| **CASE TITLE** | Woody Smith vs. JoAnne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **ENTER MEMORANDUM OPINION AND ORDER.** Plaintiff's motion for EAJA fee [doc. # 22] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

WOODY SMITH, )
 )
    Plaintiff, )
 )   No. 00 C 2643
vs. )   Magistrate Judge Schenkier
 )
JO ANNE BARNHART, Commissioner )
of Social Security Administration, )
 )
    Defendant. )

DOCKETED

JAN 31 2002

## MEMORANDUM OPINION AND ORDER

The plaintiff, Woody Smith, has filed a motion for attorneys fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d) (2001). Mr. Smith is considered a "prevailing party" under EAJA because, in a written memorandum opinion and order dated September 24, 2001 ("Mem. Op."), the magistrate judge then presiding in the case reversed the decision of the Commissioner denying Mr. Smith disability insurance benefits ("DIB"), and directed an award in favor of Mr. Smith. The Commissioner opposes the motion, arguing that fees should not be awarded to plaintiff, because the Government's position throughout the administrative proceedings as well as the litigation was substantially justified. For the reasons set forth below, this Court agrees that the Commissioner's positions were substantially justified, and therefore, denies the plaintiff's motion for EAJA fees (doc. # 22).[1]

---

[1] On August 4, 2000, the parties consented to have a magistrate judge of this Court conduct all proceedings in this case, and to enter final judgment (doc. ## 10-11). Pursuant to this consent, on August 7, 2000, this case was transferred to the magistrate judge then assigned to the case, the Honorable Thomas W. Rosemond, Jr. (doc. #12). On December 3, 2001, after plaintiff filed the motion for fees, the case was transferred to this Court due to the fact that Magistrate Judge Rosemond no longer is sitting (doc. #21).

## I.

Under the EAJA, unless special circumstances make an award unjust, a court will award attorney's fees to a prevailing party other than the Government if the position of the United States was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The Commissioner's position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Marcus v. Shalala*, 17 F.3d 1033, 1036 (7th Cir. 1994) (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n.2 (1988)). The Seventh Circuit has explained that the substantial justification standard requires that the Government show "that its position was grounded in '(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the legal theory advanced.'" *United States v. Hallmark Construction Co.*, 200 F.3d 1076, 1080 (7th Cir. 2000) (citing *Phil Smidt & Son, Inc. v. NLRB*, 810 F.2d 638, 642 (7th Cir. 1987) (quoting *Donovan v. DialAmerica Mkting, Inc.*, 757 F.2d 1376, 1389 (3d Cir. 1985)).

Under the EAJA, the Government bears the burden of proving that its position was substantially justified. *Hallmark Construction*, 200 F.3d at 1079; *see also Marcus*, 17 F.3d at 1036. In making a determination of substantial justification, a court may consider the Government's litigation position as well as its prelitigation conduct. *Marcus*, 17 F.3d at 1036. EAJA fees may be awarded if either the Government's prelitigation conduct or its litigation position is not substantially justified. *Id.* However, the district court is to make only one determination for the entire civil action. *Id.* This global assessment requires that the district court examine not simply whether the Government was substantially justified at the beginning or end of the proceedings, but also whether the Government was substantially justified in continuing to push forward at each stage. *Hallmark*

2

*Construction*, 200 F.3d at 1081. If substantially justified in its position, the Government will not be ordered to pay fees under EAJA, even if the plaintiff prevailed in the underlying action. *See Berman v. Schweiker*, 713 F.2d 1290, 1295, n. 18 (7th Cir. 1983) ("Congress . . . made clear, . . . that, merely because the government loses a case, a presumption does not arise that the government's position was not substantially justified"). *See also Young v. Sullivan*, 972 F.2d 830 (7th Cir. 1992); *Kolman v. Shalala*, 39 F.3d 173 (7th Cir. 1994); *Jackson v. Chater*, 94 F.3d 274 (7th Cir. 1996). We find that to be the case here.

## II.

On June 27, 1997, an Administrative Law Judge ("ALJ") denied Mr. Smith disability insurance benefits. Upon review, the Appeals Council remanded the ALJ's first decision ("ALJ Opinion I"), for further consideration of a borderline age situation: Mr. Smith was nearly 50 years old at the time his disability insured status expired (*e.g.*, June 30, 1994)[2] and, as such, the social security regulations, 20 C.F.R. § 404.1563(a)-(c) (2001), required consideration of whether Mr. Smith should be categorized as a "person approaching advanced age" (50-54) and therefore entitled to the benefits of that categorization under the Medical Vocational Guidelines, 20 C.F.R. Part 4, subpart P, App. 2 ("the Grid").

In the ALJ's second opinion ("ALJ Opinion II"), the ALJ considered Mr. Smith's borderline age situation, but nonetheless declined to categorize Mr. Smith as a "person approaching advanced age." The ALJ concluded that the objective medical evidence of plaintiff's residual functional capacity to perform a full range of sedentary work (as well as some light work), together with

---

[2]Mr. Smith was born on August 18, 1944 (R. 246). Thus, at the time his disability insured status expired, he was 48 days shy of being 50 years old.

3

plaintiff's ability to read, write and speak the English language, supported categorization of Mr. Smith as a "younger individual" (18-49), and required a finding of not disabled under the portion of the Grid that deals with younger individuals. The Appeals Council denied review of Mr. Smith's claims, finding that ALJ Opinion II was supported by substantial evidence in the record. That decision became the final decision of the Commissioner.

Mr. Smith appealed this decision, and the magistrate judge presiding issued a decision reversing the Commissioner and directing an award of benefits to Mr. Smith. The decision was based on the determination that Mr. Smith should have been categorized in the higher age range (as a person approaching advanced age, 50-54), because he was "within seven weeks of his fiftieth birthday"; the vocational expert testimony that plaintiff had "no transferable skills"; and the ALJ "failed to properly consider the plaintiff's subjective assertions" indicating that Mr. Smith had vocational adversities that limited him from performing a full range of sedentary work (Mem. Op. at 2-3).

The Court concluded that placement of Mr. Smith in the higher age category would change the result in this case from a finding of not disabled to disabled, based on Grid criteria that require a person in this higher age category, with Mr. Smith's profile, to have transferable skills. Since the record here contained vocational expert testimony that Mr. Smith did not have transferable skills, the Court concluded that Mr. Smith was disabled and directed an award of benefits on that basis (Mem. Op. at 2). This decision was not appealed.

4

## III.

The case law and the social security regulations and rulings that discuss borderline age situations uniformly adopt a two-part test for determining whether a claimant applying for DIB falls within one age category or another – even though there are several splits of authority on which party carries the burden of proof, and whether the Grid acts as a guide or a rule of law once the borderline age determination is reached. The test can be stated as follows.

The first step for an ALJ is to determine whether a borderline situation exists. This is done by determining, based on the evidence, whether a claimant's age is within a few days or a few months of a higher age category *at the time the disability insured status expires*. *Barrett v. Apfel*, 40 F.Supp.2d 31, 39 (D.Mass. 1999) (holding that all requirements for disability insured status must be met before ALJ's decision, since it is that date which is "relevant cut-off point"); 20 C.F.R. Part 404, Subpt. P, Appendix 2, § 201.09. *See also* 20 C.F.R. § 404.1563(b) (2001); *Freundt v. Massanari*, No. 00 C 4456, 2001 WL 1356146, * 18 (N.D. Ill., Nov. 2, 2001) (quoting HALLEX II-5-302(A) (Nov. 2, 1993).[3] The regulations do not specify precisely how close to the age of 50 years old a claimant must be in order to fall within the "borderline range." The regulations refer to a claimant being "within a few days to a few months" of the older age category, but the cases tend to treat claimants who are within six months of 50 years old as presenting borderline cases. *See, e.g., Daniels v. Apfel*, 154 F.3d 1129, 1133 (10th Cir. 1998) (borderline situation exists if gap is in range of three months or less); *Barrett*, 40 F. Supp.2d at 39 (collecting cases on age ranges that fall within

---

[3]HALLEX is the acronym for the Social Security Administration's Hearings, Appeals, and Litigation Law Manual, which includes SSA Appeals Council Interpretations. The Seventh Circuit has considered HALLEX as indicating how the Commissioner instructs its adjudicators to interpret the matter at issue. *See, e.g., Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997).

and outside the borderline window (generally 7 months or more); *Russell v. Commr. Soc. Sec.,* 20 F.Supp.2d 1133, 1135 (W.D. Mich. 1998) ("there is a six month window in which a claimant's situation is 'borderline'"); *Roush v. Heckler,* 632 F. Supp. 710 (S.D. Ohio 1985) (6 months was borderline); *see also Fruendt,* 2001 WL 1356146, at * 19 (holding that 6 months and 12 days may constitute borderline situation). If a claimant falls within the legally recognized borderline range, "and if using the higher age category would result in a decision of 'disabled' rather than 'not disabled,' then a borderline situation exists . . . ." *Fruendt,* 2001 WL 1356146, at * 18. Thus, to satisfy the first step, a claimant's age must fit within the legally recognized borderline range, *and* this proximity to the older age category must make a difference in the ultimate outcome.

If a borderline situation exists, the second step for an ALJ is to "determine whether it is more appropriate to use the higher age or the claimant's chronological age." *Id.* All courts agree, as they must, that the regulations caution against mechanical application of the age categories by use of the Grid to determine disability, once it is determined that a borderline situation exists. *See, e.g., Daniels,* 154 F.3d at 1134 (citing and quoting 20 C.F.R. § 404.1563(a)). Although it is a non-mechanical approach, *Daniels* reasons that the determination of whether a claimant falls within a borderline situation appears to be a factual rather than a discretionary matter:

> [t]he Commissioner must determine based on whatever evidence is available which of the categories on either side of the borderline best describes the claimant, and the Commissioner must apply that category in using the grids. Like any factual issue, a finding regarding the appropriate age category in which to place a claimant must be supported by substantial evidence.

*Daniels,* 154 F.3d at 1135-36. *But see Barrett,* 40 F.Supp.2d 31, 37 (D.Mass. 1999) (citing and indirectly adopting Fifth Circuit cases which conclude that the lack of definition in the regulations on borderline situations "delegates significant discretion to the Commissioner to determine when a

6

situation is in fact borderline"). We agree with the *Daniels* approach, as does the Seventh Circuit, implicitly, *see Cummins v. Schweiker*, 670 F.2d 81, 83-84 (7th Cir. 1982), and as have several other courts in this district. *See, e.g., Fruendt*, 2001 WL 1356146, at * 19-20 (adopting *Daniels'* reasoning); *Graham v. Massanari*, No. 00 C 4669, 2001 WL 527326, at * 8 (N.D. Ill., May 29, 2001) (same).

In *Daniels*, the Tenth Circuit also recognized two splits of authority – the first on which party bears the burden of establishing a borderline situation, and the second split on whether, once a borderline situation exists, the ALJ can use the Grid to direct a finding or whether the Grid serves only as a guide to the ultimate determination of disability. 154 F.3d at *Daniels* places the burden of establishing a borderline situation on the ALJ, rather than the claimant, because the determination comes at Step 5 of the sequential evaluation – a step at which the Commissioner carries the burden of proof; *Daniels* also supports continued use of the Grid to direct a finding on the issue of disability, once a borderline age category has been chosen (based on the evidence in the record). This Court finds *Daniel's* reasoning persuasive on both points, and thus will follow and apply this approach in deciding whether the Commissioner's (and thus the Government's) position in this case was substantially justified.

As explained earlier, to have a reasonable basis, and thus substantial justification, for a position, the position must be grounded in both the facts in the record and in the law as it exists in this district and in this Circuit. The Government's position satisfies this test. In his opinion on remand from the Appeals Council, the ALJ not only expressly considered the borderline age situation, but he also provided a detailed rationale for choosing to place Mr. Smith in the younger age individual category as opposed to the approaching advanced age category. The ALJ explained

7

that if Mr. Smith had barely been able to perform sedentary work, or if his subjective complaints regarding other vocational adversities has been credible, then the ALJ would have considered, based on Mr. Smith's borderline age, a shift to the higher age category, and performed the analysis necessary for individuals 50-54 years old (*i.e.*, considering whether they have transferable skills). But, the ALJ determined, based on objective medical evidence, that Mr. Smith could perform not only the full range of sedentary work, but also some light work too (he could lift 10-20 pounds); that his subjective complaints regarding his impairments were "exaggerated" based on the objective medical evidence and his ability to perform the activities of daily living; and that Mr. Smith did not have other "vocational adversities" that militated in favor of placing him in the higher age category (R. 10, 13). The ALJ further found that Mr. Smith aggravated his asthmatic condition with heavy smoking, and this was a factor in his determination. *Id.*

To the extent the decision reversing the ALJ's second opinion was based on the finding that the opinion was not supported by substantial *evidence*, that does not automatically require a finding of a lack of substantial *justification*. *See, e.g., Berman*, 713 F.2d at 1295 n.18. This Court finds that in light of the evidence of record, the Government was substantially justified in defending the ALJ's decision, because the Government had a "rational ground for thinking it had a rational ground for its action, . . . ." *Kolman v. Shalala,* 39 F.3d 173, 177 (7th Cir. 1994).

We also disagree with Mr. Smith's contention that the ALJ erred as a matter of law, and that the Government's position was not substantially justified, because the issue of transferable skills was not addressed by the ALJ (Pl.'s Reply at 2-5). To be sure, that issue was material to the issue of whether this was a borderline case. *Fruendt,* 2001 WL 1356146, at *18. But, the ALJ has treated this as a borderline case, and thus any failure to consider transferable skills at that stage was

harmless. Moreover, once the ALJ placed Mr. Smith into the younger age category, the Grid did not require the ALJ to address whether the claimant had transferable skills. The Appeals Council recognized this point in its initial remand order, clearly indicating that only if the ALJ found that Mr. Smith should be treated as falling in the advanced age category would the ALJ need to address (and perhaps take evidence) on the issue of transferable skills (R. 215) ("If the higher age category is applicable, then the Administrative Law Judge will obtain testimony from a vocational expert on the issue of transferability of work skills"). Thus, the ALJ's failure to consider the issue of transferrable skills on the question of available work did not deprive the Government of substantial justification to defend the ALJ's second opinion.

## CONCLUSION

For the reasons stated above, the Court denies the plaintiff's motion for EAJA fees (doc. # 22).

ENTER:

_____
SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: January 29, 2002